O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **HAROLYN JONES,** | ) NO. EDCV 13-01410-MAN |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **MEMORANDUM OPINION** |
| | ) **AND ORDER** |
| **CAROLYN W. COLVIN,** | ) |
| **Acting Commissioner of Social** | ) |
| **Security,** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

Plaintiff filed a Complaint on August 15, 2013, seeking review of the denial of plaintiff's application for a period of disability and disability insurance benefits ("DIB"). (ECF No. 3.) On September 5, 2013, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (ECF No. 10.) The parties filed a Joint Stipulation on September 19, 2014, in which plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, for further administrative proceedings; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings. (ECF No. 26.) The Court has taken the parties' Joint Stipulation under submission without oral argument.

1

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

2

3       Plaintiff filed an application for a period of DIB on January 5, 2010.  (Administrative Record

4  ("A.R.") 119.)  Plaintiff, who was born on December 7, 1960[1] (*id.* 15, 119), claims to have been

5  disabled since July 2, 2009, due to a laminectomy with fusion, C3-C6, as the result of a car

6  accident on that date; diabetes; high blood pressure; and high cholesterol (*id.* 152).  Plaintiff has

7  past relevant work ("PRW") experience as a nurse.  (*Id.* 18.)

8

9       After the Commissioner denied plaintiff's claim initially and upon consideration, plaintiff

10  requested a hearing.  (A.R. 11.)  On November 4, 2011, plaintiff, who was represented by

11  counsel, appeared and testified at a hearing before Administrative Law Judge Troy Silva (the

12  "ALJ").  (*Id.* 11, 20, 50-83.)  Vocational expert ("VE") Ross Moss also testified.  (*Id.* 70-83.)  On

13  November 22, 2011, the ALJ denied plaintiff's claim (*id.* 11-20), and the Appeals Council

14  subsequently denied plaintiff's request for review of the ALJ's decision (*id.* 1-4).  That decision is

15  now at issue in this action.

16

17

## SUMMARY OF ADMINISTRATIVE DECISION

18

19       In his November 22, 2011 decision, the ALJ found that plaintiff met the insured status

20  requirements of the Social Security Act through December 31, 2013, and plaintiff has not engaged

21  in substantial gainful activity since July 2, 2009, the alleged onset date of her disability.  (A.R. 13.)

22  The ALJ determined that plaintiff has the severe impairments of cervical myofascial strain; cervical

23  degenerative joint disease; and status post laminectomy and fusion.[2]  (*Id.*)  The ALJ also found

24

25

26       [1]  On the alleged disability onset date, plaintiff was 48 years old, which is defined as a younger individual.  (A.R. 18 (citing 20 C.F.R. § 404.1563).)  As noted by the ALJ, plaintiff subsequently changed age category to the closely approaching advanced age category.  (*Id.* 18-

27  19.)

28       [2]  Plaintiff had her surgery on November 15, 2009.  (A.R. 437.)

2

1  that plaintiff's hypertension, asthma, and diabetes are not severe impairments. (*Id.* 13-14.) The

2  ALJ concluded that plaintiff does not have an impairment or combination of impairments that

3  meets or medically equals the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1 (20

4  C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (*Id.* 14.)

5

6        After reviewing the record, the ALJ determined that plaintiff has the residual functional

7  capacity ("RFC") to perform less than a full range of light work as follows:  lift and/or carry 20

8  pounds occasionally and ten pounds frequently; push and pull within those weight limitations;

9  stand and/or walk for six hours in an eight-hour workday; sit for six hours in an eight-hour

10  workday; limited to occasional reaching in all directions with her bilateral upper extremities; must

11  avoid concentrated exposure to vibration and is unable to do fast-paced work; requires the use

12  of a cane to stand up or sit down; occasionally turn her head left or right and occasionally look

13  up or down with neck motion; and cannot use her right upper extremity for repetitive activities

14  such as typing or keyboarding. (A.R. 14.)  In making this finding, the ALJ considered the

15  subjective symptom testimony of plaintiff, which the ALJ found was not entirely credible, as well

16  as the medical evidence and opinions of record. (*Id.* 14-18.)

17

18        Based on plaintiff's age, education,[3] work experience, and RFC, as well as the testimony

19  of the VE, the ALJ found that "there are jobs that exist in significant numbers in the national

20  economy that [plaintiff] can perform," including the jobs of checker I, school bus monitor, and

21  lens-block gauger. (A.R. 19.)

22

23        Thus, the ALJ concluded that plaintiff has not been under a disability, as defined in the

24  Social Security Act, since July 2, 2009, the alleged onset date, through November 22, 2011, the

25  date of the ALJ's decision. (A.R. 20.)

26

27  _____

28  [3]  The ALJ determined that plaintiff "has at least a high school education and is able to
communicate in English." (A.R. 19.)

3

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; *see also* Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff claims that the ALJ erred in failing to properly consider:  (1) the relevant vocational issues at step 5 of the sequential evaluation process; and (2) plaintiff's subjective complaints. (Joint Stip. at 4.)

## I.     There Was No Error at Step 5.

Plaintiff's first contention is that the ALJ erred at step five of his analysis.  (Joint Stip. at 4-7.)  At this step, the ALJ is required to consider the potential occupations that the plaintiff may be able to perform given her RFC.  In making this determination, the ALJ relies on the Dictionary of Occupational Titles ("DOT"), "the SSA's primary source of reliable job information," which describes the requirements for each listed occupation.  Zavalin v. Colvin, __ F.3d __, 2015 WL 728036, at *3 (9th Cir. 2015).  The ALJ is also entitled to rely on the testimony of vocational experts who testify about specific occupations that the plaintiff can perform in view of her residual functional capacity.  *Id.*

When the ALJ hears VE testimony, Social Security Ruling 00-4p ("SSR 00-4p") requires him to ask the VE if the evidence provided conflicts with the information provided in the DOT and, if the VE's testimony "appears to conflict with the DOT," to obtain a reasonable explanation for the conflict.  SSR 00-4p; Massachi v. Astrue, 486 F.3d 1149, 1152-54 (9th Cir. 2007); *see also* Zavalin, 2015 WL 728036, at *3 (when there is an apparent conflict between the VE's testimony and the DOT, the ALJ is required to reconcile the inconsistency).  Specifically, "[t]he ALJ must ask the expert to explain the conflict and then determine whether the vocational expert's explanation for the conflict is reasonable."  *Id*.  The ALJ must explain in his decision how he resolved the conflict. SSR 00-4p.  An ALJ may choose to accept testimony from a VE that contradicts the DOT if the record contains "persuasive evidence to support the deviation."  Tommasetti v. Astrue, 533 F.3d 1035, 1042 (9th Cir. 2008) (quoting Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995));

1    Pinto v. Massanari, 249 F.3d 840, 846 (9th Cir. 2001).  Evidence sufficient to permit such a

2    deviation may be provided either through specific findings of fact regarding the plaintiff's RFC or

3    through inferences reasonably drawn from the context of the expert's testimony.  Light v. Soc.

4    Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997).  If the ALJ failed to perform any of his duties

5    concerning the discovery and reconciliation of possible or apparent conflicts between the VE's

6    testimony and the DOT, the ALJ's error is harmless if there was no actual conflict or the VE

7    "provided sufficient support" for his conclusion.  Massachi, 486 F.3d at 1154 n.19.

8

9         Here, the VE testified that plaintiff could perform the listed occupations of checker I, school

10   bus monitor, and lens-block gauger, and that jobs in these three occupations exist in significant

11   numbers in the national economy.  Plaintiff contends that the VE's testimony that she could

12   perform the occupations of checker I, school bus monitor, and lens-block gauger is inconsistent

13   with the information in the DOT and, further, that the ALJ erred by relying on the VE's testimony

14   without reconciling this conflict.  (Joint Stip. at 4-7.)  Defendant concedes that the ALJ erred in

15   failing to elicit a reasonable explanation for the discrepancy between the VE's testimony that

16   plaintiff could perform the job of lens-block gauger and the DOT's statement that the job of lens-

17   block gauger entails fast-paced work.  (Id. at 9 n.1.)  Thus, the only remaining questions before

18   the Court are whether the ALJ was correct in finding that:  plaintiff could perform the occupations

19   of checker I and school bus monitor; and jobs in these occupations exist in significant numbers

20   in the national economy.

21

22        **A.    Checker I**

23

24        Plaintiff argues that the VE's testimony that plaintiff could perform the occupation of

25   checker I conflicted with the DOT, because the DOT states that the checker I occupation requires

26   frequent reaching and the ALJ found that plaintiff could reach only occasionally.  (Joint Stip. at

27   5, Ex. A at 3.)  Plaintiff further contends that the ALJ erred, because he failed to:  ask whether

28   the VE's testimony was consistent with the DOT; elicit an explanation for the conflict; and

1  determine whether the VE's explanation was reasonable.   (Joint Stip. at 5, Ex. A at 3).

2

3       Before questioning the VE, the ALJ instructed him to identify any conflicts between his

4  testimony and the DOT and the basis for his opinion.  Specifically, the ALJ stated "Mr. Moss,

5  please, if you'd [sic] give us an opinion which conflicts with the information in the DOT, please

6  advise us of the conflict and the basis for your opinion." (A.R. 72.)  The VE, however, did not

7  inform the ALJ of the conflict between his testimony that plaintiff could perform the occupation

8  of checker I and the DOT's description of the maximum requirements for that occupation.  (*See*

9  *generally id* 73-75.)   Instead, plaintiff's counsel identified the conflict when he expressed

10  skepticism about the VE's testimony.  Counsel:  "The checker position doesn't require more -- it

11  only requires occasional reaching, outstretched?"  (*Id.* 75.)  The VE responded that he was not

12  thinking of all the jobs within the checker I occupation but, rather, of one particular job, *i.e.*, a

13  "greeter." (*Id.* 75-76.)  The ALJ asked "[t]hat would be somebody similar to the person I see

14  when I'm leaving Costco, maybe, that's checking off my receipt?"  (*Id.*)   The VE answered

15  "Exactly."  (*Id.*)

16

17       In deciding to rely on the VE's testimony that plaintiff could perform the checker I

18  occupation, the ALJ did not expressly acknowledge the conflict between the DOT's description of

19  the checker I occupation, which states that frequent reaching is required, and the VE's testimony

20  that plaintiff, who could only do occasional reaching, could perform the checker I occupation.

21  (*See generally* A.R. 19-20.)  Instead, the ALJ stated that "[p]ursuant to SSR 00-4p," he had

22  "determined that the vocational expert's testimony is consistent with the information contained

23  in the Dictionary of Occupational Titles." (*Id.* 19.)  The ALJ's reference to SSR 00-4p suggests

24  that the ALJ considered the conflict between the DOT and the VE's testimony even if he did not

25  expressly discuss it.  However, the ALJ was required to both acknowledge the discrepancy and

26  "explain in the determination or decision how he or she resolved the conflict.  The [ALJ] must

27  explain the resolution of the conflict irrespective of how the conflict was identified."  SSR 00-4p.

28  Accordingly, the ALJ erred by failing to explain how he resolved the conflict between the VE's

1  testimony that plaintiff could perform the checker I occupation and the information in the DOT.

2

3       The ALJ's error is harmless, however, because:  (1) the VE provided sufficient support for

4  his conclusion; and (2) regardless of whether plaintiff is able to perform the occupation of checker

5  I, she can perform the occupation of school bus monitor.  According to SSR 00-4p, a VE provides

6  a reasonable explanation for a conflict between his testimony and the information in the DOT

7  when he provides "more specific information" about a particular job within an occupation

8  described by the DOT.  As used in the DOT, the term "occupation" refers to a "collective

9  description" of numerous jobs, and the DOT lists the "maximum requirements" of each occupation

10  as generally performed -- "not the range of requirements of a particular *job* as it is performed in

11  specific settings."  SSR-00-4p (emphasis added).  Here, the VE testified that a "greeter" was one

12  particular job within the broader checker I occupation that did not require frequent reaching.

13  (A.R. 75-76); *see also* <u>Moncada v. Chater</u>, 60 F.3d 521, 524 (9th Cir. 1995) (VEs "can testify

14  whether particular applicants for disability benefits would be able to perform subcategories of jobs

15  within the DOT") (quoting <u>Distasio v. Shalala</u>, 47 F.3d 348, 350 (9th Cir. 1995)).  Accordingly,

16  pursuant to SSR 00-4p, the VE provided a reasonable explanation for the discrepancy between

17  the DOT's description of the "maximum requirements" for the checker I occupation and the VE's

18  testimony that plaintiff could perform that occupation even though she could not perform frequent

19  reaching.  Because the VE "provided sufficient support for [his] conclusion," the ALJ's error is

20  harmless.  *See* <u>Massachi</u>, 486 F.3d at 1154 n.19.

21

22       Further, even if the VE's explanation for the discrepancy was not reasonable, the ALJ's

23  failure to expressly reconcile the conflict is harmless, because the VE also testified that plaintiff

24  could perform the job of school bus monitor and a substantial number of these jobs exist in the

25  national economy.  For the reasons explained below, this testimony is consistent with the DOT and

26  provides substantial evidence that plaintiff could perform jobs that existed in significant numbers

27  in the national economy.  Accordingly, the ALJ's failure to reconcile the conflict between the VE's

28  testimony and the information in the DOT concerning the checker I occupation had no effect on

1    the ultimate nondisability determination and, thus, is not a ground for reversal.

2

3                   **B.      School Bus Monitor**

4

5           Plaintiff next argues that the ALJ erred in relying on the VE's testimony that plaintiff could

6    perform the occupation of school bus monitor, because it would be "impossible" for plaintiff to

7    perform this occupation given that she:  (1) needs to use a cane whenever changing from sitting

8    to standing, or vice versa; and (2) cannot withstand exposure to concentrated vibration.  (Joint

9    Stip. at 6-7.)

10

11          According to the DOT, a school bus monitor:

12

13                  Monitors conduct of students on school bus to maintain discipline and

14                  safety:  Directs loading of students on bus to prevent congestion and

15                  unsafe conditions.  Rides school bus to prevent altercations between

16                  students and damage to bus.  Participates in school bus safety drills.

17                  May disembark from school bus at railroad crossing and clear bus

18                  across tracks.

19

20   (Joint Stip., Ex. B.)

21

22          The DOT further states that the occupation of school bus monitor requires only "light"

23   strength -- an individual must be able to exert force to 20 lbs occasionally or 10 lbs, or less,

24   frequently -- but "may involve significant standing, walking, pushing, and/or pulling." (Joint Stip.,

25   Ex. B.) Vibration is "not present" as a common environmental working condition. (*Id.*) The DOT

26   also does not state that the occupation entails either frequent changes from sitting to standing,

27   or vice versa, or the ability to do so without an assistive device. (*See generally id.*)

28          Plaintiff concedes that the VE's testimony is consistent with the DOT but maintains that the

1 ALJ erred because it "defies common sense" to charge an individual who requires a cane to go

2 from sitting to standing, and vice versa, with maintaining discipline and safety and preventing

3 altercations. (Joint Stip. at 6.) Plaintiff further argues that "[a]nyone who has had the pleasure

4 of riding on a school bus is well aware that the ride is extremely bumpy and has constant

5 vibration." (*Id.*) As stated above, at step 5 of the analysis, the ALJ is entitled to rely on the DOT's

6 description of the requirements for each listed occupation and on VE testimony about the specific

7 occupations that the plaintiff can perform. Zavalin, __ F.3d __, 2015 WL 728036, at *3; *see also*

8 Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2001) (testimony of a VE constitutes substantial

9 evidence). These are designated sources of "reliable job information." *See* 20 C.F.R. §

10 404.1566(d)-(e); Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (ALJ may rely on "any

11 reliable job information," including the testimony of a VE); Johnson, 60 F.3d at 1435. Plaintiff

12 cites no legal authority for her contention that the ALJ should not have relied on these sources,

13 and the Court is aware of no legal authority that permits an ALJ to reject VE testimony and the

14 DOT whenever he feels it conflicts with "common sense" and his own personal experiences.

15 Accordingly, the Court finds no error with respect to the ALJ's determination that plaintiff could

16 perform the occupation of school bus monitor.

17

18 **C.     Job Numbers**

19

20 Plaintiff's final remaining argument concerning the ALJ's analysis at step 5 is that the VE

21 overstated the number of jobs in the checker I and school bus monitor job categories that are

22 available in the state and national economy. (*See* Joint Stip. at 6-7.) The VE testified that there

23 are: 4,200 checker I jobs in California; 290,000 checker I jobs nationally; 7,300 school bus

24 monitor jobs in California; and 169,000 school bus monitor jobs nationally. (A.R. 73, 76.) Plaintiff

25 contends that this testimony is not reliable job information, because it conflicts with the Bureau

26 of Labor Statistics' National Occupational Employment Statistics (OES). (Joint Stip. at 6-7.)

27 Plaintiff states that, according to the OES, "the occupation of checker is one occupation in a

28 census group of 33 specialty occupations (unique DOT codes) which combined total only 69,870

10

1    occupations [not 290,000 jobs] nationally." (*Id.* at 7.)  She similarly states that, according to the

2    OES, "the school bus monitor occupation is part of a census group consisting of 5 speciality

3    occupations, which have combined total of only 81,290 occupations [not 169,000 jobs] in the

4    country."  (*Id.*)

5

6         Plaintiff's argument -- that the OES renders the job information provided by the VE

7    unreliable -- fails for several reasons.  First, plaintiff asks the Court to credit her description and

8    interpretation of the OES but provides no original source material confirming her assertions.  Her

9    claims are not a sufficient basis for reversing the ALJ's decision.  *See, e.g.,* Wright v. Colvin, No.

10   CV 12-1893-SP, 2014 WL 5456044, at *5 (C.D. Cal. Oct. 27, 2014); Cardone v. Colvin, No. ED CV

11   13-1197-PLA, 2014 WL 1516537, at *5 (C.D. Cal. Apr. 18, 2014); Vera v. Colvin, No. CV 12-7078-

12   SS, 2013 WL 6144771, at *22 (C.D. Cal. Nov. 21, 2013).

13

14        Second, plaintiff had ample opportunity to cross-examine the VE about the job numbers

15   but neglected to ask the VE about the source of his numbers and their relationship to the OES.

16   (*See generally* 75-81.)  "Counsel are not supposed to be potted plants at administrative hearings.

17   They have an obligation to take an active role and to raise issues that may impact the ALJ's

18   decision while the hearing is proceeding so that they can be addressed."  Solorazo v. Astrue, No.

19   ED CV 11-369-PJW, 2012 WL 84527, at *6 (C.D. Cal. Jan. 10, 2012) (rejecting plaintiff's

20   contention that "apparent conflicts" existed between the VE's testimony and the DOT when

21   plaintiff's counsel failed to question the VE at the hearing about any alleged conflicts or request

22   the ALJ do so).  Here, because plaintiff failed to cross-examine the VE at the hearing, she is

23   unable to establish that the VE's numbers were based on, or should have corresponded with, the

24   OES.  As a result, plaintiff cannot establish that any discrepancy between the VE's numbers and

25   the OES undermines the VE's testimony  *Cf.* Wright,  2014 WL 5456044, at *5 (had plaintiff asked

26   the VE to explain her job numbers and the VE thereafter testified that she had relied on data

27   derived from the OES, then plaintiff would have more than speculation to support her argument

28   that the VE's testimony conflicted with the OES and was unreliable).

1  Third, plaintiff presents the Court with her lay interpretation of the OES, which, by itself,

2  is insufficient to undermine a VE's analysis. *See* Wright, 2014 WL 5456044, at *5; Cardone v.

3  Colvin, EDCV 13-1197-PLA, 2014 WL 1516537, at *5 (C.D. Cal. Apr. 18, 2014) (plaintiff's lay

4  assessment of raw vocational data does not undermine the reliability of the VE's opinion);

5  Valenzuela v. Colvin, CV 12-0754-MAN, 2013 WL 2285232, at *4 (C.D. Cal. May 23, 2013)

6  (rejecting plaintiff's assessment, in part, because it "was unaccompanied by any analysis or

7  explanation from a vocational expert or other expert source to put the raw data into context").

8  As stated above, the DOT and VE testimony are designated sources of "reliable job information."

9  *See* 20 C.F.R. § 404.1566(d)-(e); Bayliss, 427 F.3d at 1218; Johnson, 60 F.3d at 1435.  Plaintiff

10  cites no legal authority, and the Court is aware of none, that supports plaintiff's contention that

11  a court should credit a plaintiff's lay assessment of occupational data when that assessment

12  conflicts with the information provided by a vocational expert, who is a source of "reliable" job

13  information.

14

15  For these reasons, the Court finds no error with respect to the ALJ's determination that

16  there are a significant number of checker I and school bus monitor jobs in the national economy.

17

18  **II.    The ALJ Properly Evaluated Plaintiff's Credibility**.

19

20  Once a disability claimant produces objective medical evidence of an underlying impairment

21  that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective

22  testimony as to the severity of the claimant's symptoms must be considered.  Moisa v. Barnhart,

23  367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); *see also*

24  20 C.F.R. § 404.1529(a) (explaining how pain and other symptoms are evaluated).  "[U]nless an

25  ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find

26  an applicant not credible by making specific findings as to credibility and stating clear and

27  convincing reasons for each." Robbins, 466 F.3d at 883.  The factors to be considered in weighing

28  a claimant's credibility include:  (1) the claimant's reputation for truthfulness; (2) inconsistencies

1  either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the

2  claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and

3  third parties concerning the nature, severity, and effect of the symptoms of which the claimant

4  complains.  *See* Thomas, 278 F.3d at 958-59; *see also* 20 C.F.R. § 404.1529(c).

5

6         Here, the ALJ concluded that "after careful consideration of the evidence, . . . [plaintiff]'s

7  medically determinable impairments could reasonably be expected to cause the alleged

8  symptoms." (A.R. 17.)  Significantly, the ALJ cited no evidence of malingering.  Nonetheless, the

9  ALJ determined that plaintiff's "statements concerning the intensity, persistence and limiting

10  effects of [her] symptoms are not credible to the extent they are inconsistent with the above

11  [RFC] assessment." (*Id.*)  Accordingly, the ALJ's reasons for finding that plaintiff was not credible

12  with respect to her subjective symptom and pain testimony must be "clear and convincing."

13

14         Plaintiff alleges she has:  chronic neck pain that radiates into her bilateral upper

15  extremities; limited range of motion of her neck; chronic weakness in her right arm; and extreme

16  limitations in her ability to perform activities of daily living.  (A.R. 15 (citations omitted).)

17

18         Plaintiff contends that, although the ALJ relied in part on inconsistencies in plaintiff's

19  statements to discredit her complaints, the ALJ failed to specify the alleged inconsistencies in

20  plaintiff's statements regarding her ability to perform activities of daily living.  (Joint Stip. at 12-

21  13.)  She argues that the ALJ seems to have relied solely on his opinion that plaintiff's subjective

22  complaints are inconsistent with the objective evidence, but if the evidence did not support

23  plaintiff's complaints, then the ALJ would not have imposed significant limitations in his

24  assessment of plaintiff's RFC, such as use of a cane and occasional reaching in all directions with

25  her bilateral upper extremities.  (*Id.* 13.)  Plaintiff also contends that the ALJ failed to specify

26  which statements by plaintiff were not sufficiently credible.  (*Id.* 14.)  Finally, she argues that to

27  the extent the ALJ relied on the absence of supporting objective medical evidence to discount

28  plaintiff's credibility, he was not permitted to rely on this reason as the sole basis for his adverse

1    credibility finding.  (*Id.*)

2

3        A review of the record shows that the ALJ rejected plaintiff's testimony for a number of

4 clear and convincing reasons:  (1) the objective medical evidence does not support plaintiff's

5 allegations about the severity of her symptoms; (2) plaintiff made inconsistent statements

6 regarding her pain and functional limitations; and (3) plaintiff's pain symptoms are effectively

7 managed with conservative treatment.

8

9        **A.**     **Objective Medical Evidence**

10

11        The ALJ discredited plaintiff's subjective symptom testimony in part based on the

12 conclusion that the objective medical evidence does not support the severity of the symptoms and

13 limitations reported by plaintiff. (A.R. 17: "The claimant's allegations regarding the severity of her

14 pain symptom are inconsistent with the medical evidence in this case.")

15

16        As noted by the ALJ, the medical evidence showed that plaintiff walked with a normal gait,

17 did not need an assistive device, and was negative for sensory change or focal weakness.  (A.R.

18 17 (citing *id.* 372, 419, 518, 561, 589).)  Additionally, although there was evidence that plaintiff's

19 cervical spine had a reduced range of motion, her neurologic examinations were essentially

20 normal.  (*Id.* (citing *id.* 374, 518, 561, 589).)  Image studies showed "adequate decompression

21 of the cervical central canal," which the ALJ found bolstered his finding that plaintiff's pain

22 symptoms are not entirely credible.  (*Id.* (citing *id.* 375, 473).)  The ALJ also noted that, in

23 January 2011, plaintiff rated the severity of her pain as a 3 out of 10, repeatedly advised her

24 doctors that her pain was adequately controlled with Advil and physical therapy, and declined

25 stronger pain medications.  (*Id.* 16 (citing *id.* 526-28, 556-57, 587-88, 598-99.).)

26

27        These are valid reasons for discounting plaintiff's subjective complaints. <u>Morgan v. Comm'r</u>

28 <u>of Soc. Sec.</u>, 169 F.3d 595, 600 (9th Cir. 1999) (a conflict between subjective complaints and the

1  objective medical evidence in the record is a sufficient reason that undermines a claimant's

2  credibility).  However, the fact that the objective medical evidence does not corroborate the

3  degree of plaintiff's allegedly disabling symptoms, cannot form the "sole basis" for discounting

4  plaintiff's subjective symptom testimony.  Burch, 400 F.3d at 681 ("Although lack of medical

5  evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can

6  consider in his credibility analysis.");  *see* Bunnell, 947 F.2d at 34 (noting that "[i]f an adjudicator

7  could reject a claim of disability simply because a claimant fails to produce medical evidence

8  supporting the severity of the pain, there would be no reason for an adjudicator to consider

9  anything other than medical findings").  Accordingly, because the ALJ's first ground cannot, by

10  itself, constitute a clear and convincing reason for discrediting plaintiff's testimony, the ALJ's

11  credibility determination rises or falls with the ALJ's other grounds for discrediting plaintiff.

12

13  Because, as discussed below, the ALJ provides other clear and convincing reasons

14  supported by substantial evidence for discrediting plaintiff's subjective symptom testimony,

15  plaintiff is not entitled to reversal on this ground.

16

17  **B.      Inconsistent Statements**

18

19  The ALJ also observed that plaintiff made inconsistent statements regarding the extent of

20  her pain and her abilities to function despite the pain.  (A.R. 17.)  He noted plaintiff's testimony

21  that she was unable to drive, clean, vacuum, lift groceries, push food carts, wash dishes, do

22  laundry, and care for elderly mother, that she could not groom and bathe herself without

23  assistance, and that she spends much of her day in a reclined position.  (*Id.* 17, 66, 69-70, 167.)

24  He compared this testimony to various statements plaintiff made to her doctors, suggesting that

25  her pain was not nearly so extreme as she alleged.  (*Id.* 17.)  For instance, plaintiff repeatedly told

26  Robert William Watrous, MD, her chronic pain management doctor, that her pain was "adequately

27  controlled" by over-the-counter medications.  (A.R. 17 (citing *id.* 526-27, 556-57, 587-88, 598-

28  99).)  The ALJ found that these statements "strongly suggest[] that [plaintiff's] pain symptoms

1   are tolerable." (*Id.*)  Plaintiff also told Dr. Watrous that she required only "minimal assistance"

2   with her activities of daily living, and that her pain symptoms did not interfere with her sleep or

3   her mood. (*Id.* (citing *id.* 526-27, 556-57, 587-88, 598-99.))

4

5   The inconsistency between plaintiff's statements to her doctors and her statements to the

6   ALJ indicates that plaintiff was less than candid and, consequently, is a clear and convincing

7   reason for discrediting plaintiff's testimony. Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012)

8   ("Even where [daily] activities suggest some difficulty functioning, they may be grounds for

9   discrediting the claimant's testimony to the extent that they contradict claims of a totally

10  debilitating impairment"); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).

11

12  **C.      Effective and Conservative Treatment**

13

14  Finally, the ALJ noted that plaintiff's pain symptoms are "well managed" with physical

15  therapy and over-the-counter medications. (A.R. 16 (citing *id.* 518-19, 526-29, 556-59, 573, 587-

16  89. 598-600).)   Plaintiff declined narcotic therapy, stating that her pain symptoms were

17  adequately controlled with Advil. (*Id.* (citing *id.* 587-89, 598-600).)  Indeed, when plaintiff started

18  physical therapy in April 2010, she reported her pain as 10 out of 10 (*see, e.g., id.* 437); in 2011,

19  plaintiff reported that her pain was a 3 out of 10 (*id.* (citing *id.* 518-19, 526-29)).   She also

20  reported that her pain symptoms lessened with physical therapy. (*Id.* (citing *id.* 437-53).)

21

22  The ALJ was entitled to discount plaintiff's credibility based on her positive response to

23  treatment.  *See* Tommasetti, 533 F.3d at 1040 (ALJ may infer that claimant's "response to

24  conservative treatment undermines [claimant's] reports regarding the disabling nature of his

25  pain"); Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments

26  that can be controlled effectively with medication are not disabling); 20 C.F.R. § 404.1529(c)(3)(v)

27  (an ALJ may consider treatment that claimant receives for relief of his pain or other symptoms);

28  McKnight v. Comm'r Soc. Sec., No. 1:12-CV-00726-AWI-JLT, 2013 WL 3773864, at *9 (E.D. Cal.

July 17, 2013) (ALJ properly discounted physician's opinion based on claimant's positive response to conservative treatment, including knee injections and pain medication).  Thus, this was a clear and convincing reason for discounting plaintiff's credibility.

### D.    Conclusion

Because the ALJ's credibility finding was supported by substantial evidence, the Court "may not engage in second-guessing."  Thomas, 278 F.3d at 959 (citation omitted).  Plaintiff is not entitled to reversal on this ground.

### CONCLUSION

Accordingly, for the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error.  Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED: March 18, 2015

_Margaret A. Nagle_
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE